90   569
108  444
108  448

STATE OF IOWA V. BURT RUSSELL *et al.*, Appellants.

**Drawing Grand Jury: More Than One Juror From a Township.** Where a district contains as many townships as there are grand jurors to be drawn, an indictment found by a jury having more than one member from one township should be set aside on motion made by defendants who have had no opportunity to challenge the panel. Code, section 241, as amended by Acts, Twenty-First General Assembly, chapter 42, section 2; Code, sections 4260, 4337.

**Grounds of Challenge.** An indictment for adultery against a woman will not be set aside because her husband's brother was one of the jurors who found it. Code, sections 4261, 4337. (2)

**Commencing Prosecution for Adultery: Subsequent Divorce.** Where a husband begins a prosecution for adultery against his wife, a subsequent divorce does not abate the prosecution, nor render him incompetent as a witness. (3)

*Appeal from Harrison District Court.*—HON. A. VAN WAGENEN, Judge.

SATURDAY, MAY 12, 1894.

THE defendants were charged by indictment with the crime of adultery. There was a trial, a verdict of guilty, and a judgment on the verdict. The defendants appeal.—*Reversed.*

*Sanford H. Cochran* for appellants.

*John Y. Stone* and *Thos. A. Cheshire* for the state.

ROBINSON, J.—The indictment alleges that the crime charged was committed on the fifth day of September, 1892, in Harrison county, in this state, by the defendants, who then and there had sexual intercourse with each other. At that time the defendant Emerine Russell was the wife of James Coulthard. He voluntarily appeared and testified before the grand jury, and

asked that the defendants be dealt with according to law. At that time an action for divorce, instituted by his wife, was pending, and the divorce was afterward granted to her. She then married her codefendant, Burt Russell.

I. The defendants had not been held to await the action of the grand jury, and had no opportunity to object to it until after the indictment had been found. Before pleading to it they moved to set it aside on two grounds, the substance of the first of which is that the grand jury by which the indictment was found was illegal, for the reason that two of its members were residents of the same township. The motion was overruled. As we understand the record, at the term of court at which the indictment was found, and after it was returned, the grand jury was discharged on motion of the county attorney, for the alleged reason that two of the grand jurors resided in the same civil township, "and did at the time the grand jury were drawn." We do not think that action of the district court was such an adjudication of the legality of the grand jury as to affect the liability of the defendants under the indictment found, and that must be determined on the merits, without regard to the action of the court in discharging the jury. Grand jurors are drawn substantially as follows: On or before the first Monday of September of each year the county auditor apportions the number to be selected from each election precinct, the number amounting in the aggregate to seventy-five, and causes written notices of the apportionment to be delivered to one of the judges of election in each precinct. The judges thereupon select the required number of persons, and return their names to the county auditor with the election returns. Code, sections 234, 236–238. The returns thus made necessarily show the township in which each one of the seventy-five jurors resides. When a grand jury is

to be drawn, the county auditor or his deputy is required to write out the names of persons on the list on separate ballots. *Id.*, section 240. The drawing is conducted as follows: After thoroughly mixing the ballots so prepared, "the clerk or his deputy shall draw therefrom the requisite number of jurors to serve as aforesaid, and shall, within three days thereafter, issue a precept to the sheriff, commanding him to summon the said jurors to appear before the court as provided in section 230 of the Code. When the grand jury shall be composed of five jurors only, the number drawn shall be eight, and when the grand jury shall be composed of seven members the number of grand jurors to be drawn shall be twelve; provided that in drawing such grand jury not more than one person shall be drawn as a grand juror from any civil township, excepting where the grand jury is by law required to be drawn from a district containing fewer civil townships than the number of grand jurors required to be summoned; in which case, if the number of civil townships in such district be not less than one half of the number of jurors required, not more than two persons shall be drawn as grand jurors from any such township; and, if the number of civil townships be less than one half of the numbers of jurors required, not more than three persons shall be drawn as grand jurors from any such township. If more persons shall be drawn from any civil township than are hereby authorized it shall be the duty of the officer drawing such grand jury to reject all superfluous names so drawn, and to proceed with the drawing until the required number of jurors shall be secured." Code, section 241, as amended in 1886 by section 2, chapter 42, Acts, Twenty-First General Assembly. It has been decided frequently that, when there has been a substantial compliance with the provisions of the law in drawing a grand jury, an indictment returned by it should

not be set aside on account of some slight departure from the statute in the drawing, and some of its provisions have been held to be directory. *State v. Ansaleme*, 15 Iowa, 44; *State v. Knight*, 19 Iowa, 94; *State v. Carney*, 20 Iowa, 83; *State v. Brandt*, 41 Iowa, 600.

It is claimed that the provisions of the statute now under consideration are directory, and that the motion to set aside the indictment on the ground stated was properly overruled. But none of the cases cited arose under the statute of 1886, and the part of that statute quoted has not been held to be directory merely. The case of *State v. De Bord*, 88 Iowa, 103, 55 N. W. Rep. 79, was decided since it was enacted, but construed other provisions of the law. In *State v. Beckey*, 79 Iowa, 368, 44 N. W. Rep. 679, it appeared that a grand jury had been drawn in manner as follows: The ballots containing the names returned from each of fifteen townships were separated and sealed in separate envelopes. Those were placed in a box, from which twelve envelopes, that being the required number of jurors, were drawn. The ballots in each envelope were then taken out, placed in a box, and one ballot drawn therefrom, and the person named on the ballot drawn was summoned as the juror from his township. It was held that there was a substantial departure from the requirements of the statute, and that an indictment found by the grand jury so drawn should be set aside. It appears to us that the same conclusion must be reached in this case. It is the general rule that "negative terms in a statute show a legislative intent to make the provision imperative requiring a strict performance in respect to both time and manner." 23 Am. and Eng. Encyclopedia of Law, 455, note 3; Suth. St. Const., section 454; *State v. Hilmantel*, 21 Wis. 571; *Bladen v. Philadelphia*, 60 Pa. St. 464. The statute in question does not merely direct the manner of drawing jurors, but pro-

vides that "not more than one person shall be drawn
as a grand juror from any civil township," excepting
in certain cases, when it becomes necessary to do so;
and, in the excepted cases, the number which may be
drawn from one township is made as small as is practi-
cable.    The statute not only prohibits the drawing of
more than one juror from one township in such cases
as this, but provides expressly that if more are drawn
it shall be the duty of the officer drawing the jury to
reject all superfluous names.    It would be difficult for
language to express more clearly the legislative intent
to prevent the drawing of more than one juror from a
township in counties or districts having as many town-
ships as there are jurors to be drawn.    It was the
intent of the general assembly to secure impartial
grand jurors, as free from local prejudice and undue
influence as possible.    Jurors are more likely to be
influenced by the excitement and prejudice of their
locality than are those who reside at a distance from
it.    If two jurors may be drawn from one township, the
entire panel may so be drawn.    Jurors prejudiced or
unduly influenced by excitement may not only exercise
an undue influence to secure indictments which should
not be found, but also to defeat the finding of indict-
ments which the evidence before the grand jury de-
mands.    It was, no doubt, to prevent such evils as these
that the statute of 1886 was enacted; but, under the
construction contended for by the state, the legislative
intent might, to a material extent, be defeated by care-
less or designing officers.    Section 4260 of the Code
authorizes a challenge to the panel when not drawn as
required by law, but the defendants had no oppor-
tunity to make such a challenge.    A motion to set
aside an indictment may be made under section 4337
of the Code, and must be sustained when the grand
jury "were not selected, drawn, summoned, impaneled
or sworn as prescribed by law."    It is clear that the

grand jury in this case was not drawn as prescribed by law. Section 4538 of the Code provides that, "if the appeal is taken by the defendant from a judgment against him, the supreme court must examine the record, and without regard to technical errors or defects which do not affect the substantial rights of the parties, render such judgment on the record as the law demands." But it can not be said that the error in this case was purely technical, or that it appears that the substantial rights of the defendants were not affected. We conclude that a motion to set aside the indictment should have been sustained on the ground stated.

II. The remaining ground of the motion to set aside the indictment is that John Coulthard, a brother of James, was a member of the grand jury, and took part in its proceedings. That alone would not have been a sufficient cause for which to challenge the juror. Code, section 4261. Nor does the statute make it a ground upon which the indictment may be set aside. *Id.*, section 4337. The motion as to that ground was properly overruled.

III. James Coulthard, the husband of Mrs. Russell at the time the offense charged is said to have been committed, was permitted to testify on the trial as a witness against the defendants. It is insisted that his testimony was not competent, because she had ceased to be his wife, at the time it was given. The argument in support of that claim seems to be that, as section 4008 of the Code provides that "no prosecution for adultery can be commenced but on the complaint of the husband or wife," the right to maintain the prosecution depends upon the continuance of the marriage relations; that the crime is against the injured party to that relation; and that public policy demands the discontinuance of the prosecution when that relation ends. It is only necessary that the prosecution be commenced by the husband or wife. After

that is done, it may be continued without further appearance or action on the part of the one who commenced it. *State v. Briggs*, 68 Iowa, 419, 27 N. W. Rep. 358. If the offense was committed, the husband had the right to commence the prosecution, and the subsequent divorce and remarriage of the wife did not cancel the offense, nor bar the prosecution for it; and that is true, whether the crime be regarded as against the husband or as against the .state. The testimony of Coulthard was, therefore, properly received in evidence.

IV. In view of the conclusions announced, it is unnecessary to consider other questions discussed by counsel. For the failure of the district court to set aside the indictment on the first ground of the motion which assailed it, the judgment is REVERSED.